579 So.2d 488 (1991)
Terry J. KRAEMER
v.
SANTA FE OFFSHORE CONSTRUCTION COMPANY, A DIVISION OF SANTA FE INTERNATIONAL CORPORATION.
No. 90-CA-1459.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1991.
*489 O'Neil J. Parenton, Jr., Donaldsonville, for plaintiff/appellant.
Andrew C. Partee, Jr., Partee & Evans, New Orleans, for defendant/appellee.
Before GARRISON, ARMSTRONG and PLOTKIN, JJ.
GARRISON, Judge.
Plaintiff, Terry Kraemer, filed this suit for damages against his former employer, Santa Fe Offshore Construction Company, a Division of Santa Fe International Corporation alleging that the defendant violated the Civil Rights Act for Handicapped Persons, LSA-R.S. 46:2251, et seq. Plaintiff alleged that he was discriminated against by the defendant as a "handicapped" person under the definition set forth in R.S. 46:2251, et seq. He also alleged that his handicap is unrelated to his ability to perform his duties for his employer and that his employer did not reasonably accommodate him as required by R.S. 46:2251, et seq.
On August 4, 1979, the plaintiff was hired by the defendant as a barge welder and worked onshore and offshore until he was diagnosed on August 25, 1983 as having an allergic condition which could cause him to suffer urticaria (hives) and angioedema. Plaintiff's treating physician, Dr. Fernandos Palomeque, explained that angioedema is the sudden swelling of tissues due to an accumulation of fluid. Because plaintiff's condition could result in an allergic reaction requiring immediate medical treatment, Dr. Palomeque restricted the plaintiff from performing offshore work but placed no restrictions on him for his onshore work. The plaintiff continued to perform his onshore welding duties until February 20, 1985 when his employment was terminated due to his inability to perform his job requirements which included that welders be able to work offshore as well as onshore. The plaintiff claims that he was fired because his allergic condition prevented him from working offshore and that this action by his employer constituted discrimination based on his handicap, i.e. his allergic condition.
The defendant filed a declinatory exception of lack of subject matter jurisdiction arguing that it was not a "person" within the meaning of LSA-R.S. 46:2253(5) and, therefore, is excluded from coverage under the act. Furthermore, the defendant argued that it is covered by the Rehabilitation Act of 1973, 29 U.S.C. § 793, which *490 provides administrative enforcement procedures as a claimant's exclusive remedy and thus preempts state court enforcement of its provisions. The trial judge denied defendant's exception of lack of subject matter jurisdiction.
The defendant then filed a motion for summary judgment for the same reasons assigned in its exception of lack of subject matter jurisdiction. The trial judge denied this motion and both this court and the Louisiana Supreme Court denied writs taken from the trial court denial of that motion.
Following trial, the trial judge rendered judgment in favor of the defendant and against the plaintiff dismissing plaintiff's suit at his cost. Plaintiff appealed the trial court judgment and the defendant answered the appeal arguing that the trial court erred in denying its declinatory exception of lack of subject matter jurisdiction.
On appeal, the plaintiff first argues that the trial court erred in finding that the plaintiff failed to show that the defendant needed a fourth welder who performed no offshore work. The trial judge made this finding after determining that, at the time of plaintiff's termination, the defendant employed three other full-time welders who performed no offshore work. The trial judge noted that the defendant continued to employ plaintiff as an offshore welder for a significant period of time following the diagnosis of his medical condition in spite of his inability to perform the job to which he was assigned, i.e. an offshore welder with some onshore duties. The plaintiff was terminated only after he informed his employer that he would not be able to work offshore for another six months.
The record supports this factual finding by the trial judge. Plaintiff argues that he proved that a fourth welder who did only onshore work was needed by offering the testimony of several of his co-employees who stated that temporary contract welders who performed only onshore work were hired by the defendant immediately after plaintiff's termination. However, no evidence was offered to show that the defendant hired any additional full-time welders who performed only onshore work after plaintiff's termination. Furthermore, the fact that the other three full-time welders who worked for the defendant at the time of plaintiff's termination only worked onshore is not evidence that these employees would never be required to work offshore. Rather, the record indicates that company policy was that employees hired as combination welders had to be able to work both onshore and offshore.
Therefore, there was no manifest error in this factual finding of the trial judge.
Secondly, the plaintiff argues that the trial court erred in finding that plaintiff's handicap did not materially limit his life activities. The trial judge based this finding on evidence showing that the plaintiff could fully perform his occupation of welding in spite of his allergies.
LSA-R.S. 46:2253(3) of the Civil Rights Act for Handicapped Persons defines "major life activities" as:
"Functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."
The plaintiff argues that the testimony of Dr. Palomeque showed that his life activities were limited because an allergic reaction could cause an acute obstruction of the respiratory system possibly leading to cardiac arrest and death. However, this testimony by Dr. Palomeque was merely his opinion of possible complications which could occur if plaintiff suffered a severe allergic reaction. Neither Dr. Palomeque's testimony nor any other evidence shows that plaintiff's major life activities as defined above were actually curtailed in any way. In fact, Dr. Palomeque stated that he did not restrict plaintiff's onshore welding activities in any way.
Therefore, the trial judge's finding that plaintiff's life activities were not materially limited by his medical condition was not manifestly erroneous.
Finally, the plaintiff argues that the trial court erred in finding that the defendant reasonably accommodated plaintiff, *491 i.e. that the defendant gave the plaintiff the opportunity to perform his job within the confines of his medical condition. The trial judge found that the defendant reasonably attempted to accommodate the plaintiff for a reasonable period of time and terminated him only when he could not return to his full former duties.
LSA-R.S. 46:2254(C)(2) states as follows:
"C. An employer, labor organization, or employment agency shall not:
... (2) Discharge or otherwise discriminate against an otherwise qualified individual with respect to compensation or the terms, conditions, or privileges of employment, on the basis of a handicap when it is unrelated to the individual's ability to perform the duties of a particular job or position."
LSA-R.S. 46:2253(4) states in pertinent part:
"(4) `Otherwise qualified handicapped person' means:
(a) With respect to employment, a handicapped person who, with reasonable accommodation can perform the essential functions of the job in question."
LSA-R.S. 46:2253(19) defines "reasonable accommodation", in pertinent part", as follows:
"(19) `Reasonable accommodation' means an adjustment or modification to a known physical limitation of an otherwise qualified applicant or employee which would not impose an undue hardship on the employer ... Undue hardship is determined on a case by case basis taking into account the following:
(a) Employee for which accommodation is to be made.
(b) Specific disability of employee.
(c) Essential job duties of employee.
(d) Working environment."
The plaintiff in this case was hired as a combination welder which required that he be able to work onshore and offshore. When plaintiff's allergic condition was diagnosed and his doctor recommended that he temporarily work onshore only, the defendant accommodated plaintiff by only assigning onshore duties to him. The defendant allowed plaintiff to work only onshore from the time that he was diagnosed on April 25, 1983 until his termination on February 20, 1985, a period of almost two years.
The plaintiff's employment was terminated when he informed the defendant that his physician recommended that he refrain from working offshore for another six months. Because all employees hired by the defendant as combination welders, including plaintiff, were required to be able to work onshore and offshore, the continued restrictions placed upon plaintiff by his physician made him unable to perform his job duties. The defendant was more than reasonable in accommodating plaintiff by allowing him to work onshore only for almost two years. Therefore, there is no manifest error in the trial judge's finding that the defendant reasonably accommodated the plaintiff.
For these reasons, we affirm the trial court judgment. Because the trial court judgment dismissing plaintiff's suit is being affirmed, the defendant's argument that the trial court erred in denying its declinatory exception of lack of subject matter jurisdiction need not be addressed.
AFFIRMED.