703 So.2d 187 (1997)
Aliasghar KHATIBI
v.
WILLIAM B. REILY & CO., INC.
No. 97-CA-0392.
Court of Appeal of Louisiana, Fourth Circuit.
November 26, 1997.
*188 Victor R. Farrugia, New Orleans, for Plaintiff/Appellant.
Michael T. Tusa, Jr., Metairie, for Defendant/Appellee.
Before LOBRANO, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
This is an employment discrimination case. The plaintiff alleges that he was discriminated against upon the basis of disability and national origin. The trial court granted summary judgment in favor of the defendant and dismissed the plaintiff's suit. The evidence is undisputed that, even with reasonable accommodation, the plaintiff was physically disabled from performing the particular job at issue. Therefore, there was no disability discrimination. There is no evidence that the plaintiff was treated any differently than the other employees who performed the same job. Therefore, there was no discrimination based upon national origin. Consequently, we affirm the judgment of the trial court.
Plaintiff-appellant Aliasghar Khatibi is an Irarian-born non-citizen resident of the United States. He first was employed by defendant-appellee William B. Reily & Company, Inc. ("Reily") in 1981 as a Stockman. Reily supplied food products to grocery stores and, as a Stockman, Mr. Khatibi went to grocery stores to restock shelves, "reset" (i.e. rearrange) products on shelves and build displays. In 1991, a Reily sales representative, Bob Coombs, died, and Mr. Khatibi was promoted to Salesman. Mr. Khatibi's duties then included taking orders from grocery stores, and contacting grocery stores with respect to orders. He also continued to stock grocery store shelves, reset products and build displays. With his promotion to Salesman, Mr. Katibi was given a company car (which he apparently could use for personal as well as company business), a small raise, and year-end bonuses which varied in amount depending upon Reily's success that year.
In January 1994, Mr. Khatibi injured his back while working. Some time later, he told Reily that, because of his back injury, he could no longer stock products on grocery store shelves. A Reily Stockman, Joe Duplesis, took over Mr. Khatibi's stocking. Mr. Khatibi then told Reily that, because of his back injury, he could not do resets. Reily Salesmen Walter Molina and George Modica then took over Mr. Khatibi's resets. Mr. Khatibi also said that, because of his back injury, he could not build displays. The grocery stores then took over the building of displays for Mr. Khatibi. Eventually, because of pain from his back injury, Mr. Khatibi said that he could not drive to grocery stores to take orders. Reily allowed Mr. Khatibi to stay home and take orders by telephone.
In November 1994, Reily apparently became concerned that Mr. Khatibi was not communicating fully about his medical condition. Reily manager Don Simpson wrote a November 11, 1994 letter to Mr. Khatibi expressing that concern and stating that, if Mr. Khatibi did not communicate the requested information by noon on November 15, 1994, then he would be terminated. In response, Romualdo Gonzalez, an attorney representing Mr. Khatibi as to worker's compensation matters, wrote a November 15, 1994 letter to Mr. Simpson which enclosed a *189 November 14, 1994 Disability Certificate from Mr. Khatibi's doctor, Raul R. Diaz, M.D., which stated as to "Restrictions" that Mr. Khatibi was "off work 11/14/94 through 12& 6112/94." Mr. Khatibi never returned to work at Reily. Based upon Dr. Diaz' evaluation that Mr. Khatibi was temporarily totally disabled, Mr. Khatibi began to receive worker's compensation benefits and applied for Social Security disability benefits.
Mr. Khatibi subsequently brought the present suit against Reily alleging disability discrimination and national origin discrimination. After the deposition of Mr. Khatibi, Reily moved for summary judgment which motion the trial court granted. Mr. Khatibi does not argue that he did not have sufficient opportunity for discovery. As this is an appeal from a summary judgment, we must determine whether there was any genuine issue as to material fact and whether the mover, in this case Reily, is entitled to judgment as a matter of law. La. Code Civ. Proc. art. 966 (amended by 1997 La Acts 483).
The basis of Mr. Khatibi's disability discrimination claim is his argument that he could have returned to work in January 1995 with reasonable accommodation but that Reily refused to accommodate him. As noted above, Dr. Diaz wrote a November 14, 1994 Disability Certificate that restricted Mr. Khatibi from any work at all through December 12, 1994. Dr. Diaz saw Mr. Khatibi again on December 15, 1994 and, on that date, wrote a Disability Certificate with "Restrictions" which stated: "Sedentary work only; cannot engage in regular occupation." Dr. Diaz testified that he was aware of the physical requirements of the job of Salesman at Reily and, as of December 15, 1994, he did not want Mr. Khatibi performing that job. Dr. Diaz next saw Mr. Khatibi on January 12, 1995 and continued the same restrictions. Dr. Diaz testified in his deposition that, as of January 12, 1995, he did not believe that Mr. Khatibi could work as a Reily salesman. Dr. Diaz saw Mr. Khatibi on March 25, 1995 and found Mr. Khatibi to be completely disabled even from sedentary work. As of October 1995, when he was deposed, Dr. Diaz found Mr. Khatibi still disabled even from sedentary work. The net result of Dr. Diaz' deposition testimony, which Mr. Khatibi does not contest, is that Mr. Khatibi could have done sedentary work during the roughly one hundred day period from December 15, 1994 to March 25, 1995. Dr. Diaz was not certain that Mr. Khatibi could do even sedentary work during that period but, for purposes of summary judgment, we will assume that he could.
Mr. Khatibi acknowledges, in accord with Dr. Diaz' testimony, that he could not have worked as a salesman from December 15, 1994 to March 25, 1995. But, he argues that he could have done some type of filing/clerical job for Reily. Mr. Khatibi was told by Reily that they did not have any sedentary work available. Mr. Khatibi has not pointed out any summary judgment evidence that Reily needed anyone to do sedentary work.
More importantly, the disability employment discrimination statute has been interpreted by us previously as not requiring employers to provide complete new positions to employees. The statute provides, in pertinent part:
C. An employer, labor organization, or employment agency shall not:
(1) Fail or refuse to hire, promote, or reasonably accommodate an otherwise qualified individual on the basis of a handicap when it is unrelated to the individual's ability with reasonable accommodation to perform the duties of a particular job or position.

(2) Discharge or otherwise discriminate against an otherwise qualified individual with respect to compensation or the terms, conditions, or privileges of employment, on the basis of a handicap when it is unrelated to the individual's ability to perform the duties of a particular job or position.

La. R.S. 46:2254(c)(1) and (2) (emphasis added).
(4) "Otherwise qualified handicapped person" means:
(a) With respect to employment, a handicapped person who, with reasonable *190 accommodation can perform the essential functions of the job in question.

La. R.S. 46:2253(4)(a) (emphasis added).
(19) "Reasonable accommodation" means an adjustment or modification to a known physical limitation of an otherwise qualified applicant or employee which would not impose an undue hardship on the employer. This shall not require an employer to spend more for architectural modifications than that amount now allowed as a federal tax deduction. However, "reasonable accommodation" shall not be construed to impose on any private sector employer, unless otherwise required by law under any contract with a federal, state or local governmental body or subdivision, any additional costs in the hiring or the promotion of a handicapped person. Undue hardship is determined on a case by case basis taking into account the following:
(a) Employee for which accommodation is to be made.
(b) Specific disability of employee.
(c) Essential job duties of employee.
(d) Working environment.
La. R.S. 46:2253(19). As can be seen from the emphasized language, the statute requires an employer to make reasonable accommodation so that the employee who becomes disabled can continue to perform the same job. Nothing in the statute requires an employer to give the employee a new job.
In Ramie v. Department of Fire, 617 So.2d 92 (La.App. 4th Cir.1993), the plaintiff, who was a fireman, was advised by his doctors that he must avoid exposure to smoke. He sought transfer to another job but, instead, he was terminated. We held that the statute "contemplates an adjustment or modification (i.e. an accommodation) which would enable an individual to overcome a physical disability so that he would then have the ability to perform the duties of the particular job or position in question." 617 So.2d at 94. We noted that there was no evidence in the record which indicated that the employer "could make any type of accommodation, much less a reasonable one, which would enable Ramie to overcome his physical condition so that he would have the ability to perform the essential duties of a firefighter." Id. Similarly, in the present case, there is no evidence of any accommodation, much less a reasonable one, that Reily could make so that Mr. Khatibi could perform the essential functions of a Reily Salesman.
In Kraemer v. Santa Fe Offshore Construction Co., 579 So.2d 488 (La.App. 4th Cir.1991), the plaintiff was employed as a welder by the defendant. The job required the plaintiff to work both onshore and offshore. Because of a diagnosis of a severe allergic condition which could require immediate medical treatment, the plaintiff's doctor restricted him from working offshore. After some time, the defendant terminated the plaintiff because of his inability to work offshore. The plaintiff argued that his employer should have accommodated him by allowing him to work as an onshore-only welder. We held that the employer was not required to so change the duties of the plaintiff's position and ruled in favor of the defendant.
In Riddle v. LP & L, No. 94-1386 (La.App. 1st Cir. 4/7/95), 654 So.2d 698, writ denied, 95-1599 (La.9/29/95), 660 So.2d 871, the plaintiff worked as a meter reader. He developed a medical condition which precluded him from performing that job. His employer assigned him, temporarily, to a job which required only desk work but, ultimately, terminated him because he was physically unable to work as a meter reader. The plaintiff argued that the employer should have given him a permanent light duty position. The Riddle court held that "the law does not require that LP & L reassign Mr. Riddle to a new position as a reasonable accommodation." 654 So.2d at 703. Similarly, in the present case, the law does not require Reily to reassign Mr. Khatibi to a filing/clerical position.
As to Mr. Khatibi's claim of discrimination based upon national origin, the gist of his claim is that, after he was promoted from Stockman to Salesman, he was treated differently than Reily's other Salesmen. Specifically, he asserts that all of the other Salesmen were assigned assistants to do stocking, resets and building displays whereas he had *191 to do those tasks himself. The short answer to this claim of Mr. Khatibi is that there is no evidence to support it and, indeed, the summary judgment evidence is all directly to the contrary.
There were three other Reily Salesmen: Walter Molina, George Modica and Al Martin. Mr. Khatibi testified in his deposition that Mr. Modica was from Ecuador, that he did not know Mr. Molina's nationality/national origin and that Mr. Martin was "American." Mr. Khatibi also testified that Mr. Martin was semi-retired and, as a result, had an agreement with Reily that he would not do stocking or resets. Thus, Mr. Khatibi has no real basis for comparison to support his claim that, because he was foreign born, he was treated differently. Mr. Martin is not comparable because he was semi-retired, Mr. Modica was, like Mr. Khatibi, foreign born and Mr. Molina's nationality/national origin is unknown. Even more importantly, Mr. Khatibi admitted in his deposition that, because Mr. Molina and Mr. Modica went to different stores than he did, that he really did not know what they did. Both Mr. Molina and Mr. Modica provided affidavits in which they stated that they did do stocking and resets. Thus, Mr. Khatibi has not shown that Reily treated its other Salesmen (other than semi-retired Mr. Martin) any differently than Mr. Khatibi, and Reily has shown just the opposite.
For the foregoing reasons, the judgment of the trial court is affirmed
AFFIRMED.